# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VALERIE HORNE, VERINA HORNE, VERNITA HORNE, VERLISA HORNE, VERNON HORNE, and VERLENCIA HORNE,<br><br>Plaintiffs,<br><br>vs.<br><br>OFFICER DWAYNE WHEELER and THE VILLAGE OF MAYWOOD,<br><br>Defendants. | Case No. 03 C 7252 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Valerie Horne and several of her family members have filed a six-count complaint against Maywood police officer Dwayne Wheeler and the Village of Maywood, asserting claims pursuant to 42 U.S.C. § 1983 and supplemental state law claims for defendants' role in obtaining and executing a search warrant at the Horne family residence. Specifically, the plaintiffs contend that defendants violated their Fourth Amendment rights by conducting an unreasonable search of the premises, improperly detaining them, using excessive force, and failing to knock and announce before entering the home. Valerie, Verina, and Vernita Horne assert state law claims of assault and battery. Finally, each plaintiff alleges state law claims of intentional infliction of emotional distress and false imprisonment. This case is before the Court on defendants' motion for summary judgment. For the reasons stated below, the Court grants Wheeler and the Village's

1

motion with respect to the plaintiffs' federal claims and dismisses the state law claims for lack of supplemental jurisdiction.

## Facts

On September 27, 2002, Wheeler obtained a search warrant from Judge Donna Cervini to search "a M/B named Aaron Rice . . . nicknamed 'Hank' and the 1st floor apartment door located on the east side of the building located at 2947 W. Warren Blvd., Chicago, Cook County, IL." Defs' Ex. 8. The apartment described in the warrant is the Horne residence. Among other things, the warrant provided that officers could seize heroin, guns, and drug paraphernalia. *Id.*

Wheeler's complaint in support of his request for the search warrant stated that he had probable cause to believe that the items to be seized were located upon Rice and in the premises. The complaint contained a summary of information provided to Wheeler by a confidential informant, including the informant's belief that Rice resided at 2947 W. Warren and sold drugs out of his bedroom in that apartment. The confidential informant, whose name defendants have chosen not to reveal in this case, had been arrested on September 26, 2002 after Wheeler and another officer observed the informant selling heroin. The informant was charged with possession of a controlled substance, aggravated fleeing, and fleeing and eluding. Because the reliability of the informant's statement is at issue, we will briefly discuss the circumstances surrounding his statements to police.

Subsequent to his arrest, the informant admitted during an interview with Wheeler and detective Lawrence Connor that he had been selling heroin. He advised the police that he had been selling heroin for fifteen years and that "Hank," whom he had known for approximately five years, had been his supplier. According to the informant's signed statement, he had purchased

heroin from Rice over 300 times in the previous five years, including fifteen times in the month prior to his arrest, the most recent being the day before his arrest, when he purchased the heroin confiscated by police. The informant stated that the heroin transactions would occur in "Hank's bedroom" at 2947 W. Warren and that he had seen three guns in the bedroom and living room, and a scale and baggies in the bedroom. The informant also provided police with a diagram of the apartment layout. Defendants acknowledge that the confidential informant had previously been arrested six times, including four times for felony possession of a controlled substance and retail theft. According to defendants, the informant was not promised any sort of leniency for his cooperation.

Later on the evening of the informant's arrest, Wheeler and two other officers drove the informant to 2947 W. Warren. The informant directed them to the apartment, identified the residence, and repeatedly confirmed that it was the location where he had purchased drugs from Rice. The next morning, officers conducted surveillance on the 2947 W. Warren address but did not observe anyone entering or leaving the apartment.

After obtaining a statement from the informant, Wheeler maintains, he visited the 11th District Police Station in Chicago and spoke with tactical officers. The officers advised him that "Hank" was Aaron Rice, a known drug dealer, whose house had previously been hit with search and arrest warrants. According to Wheeler, the officers also told him that Rice did not live at 2947 W. Warren, but instead lived kitty-corner to that building. Wheeler ran a background check on Rice and confirmed that he lived across the street from the apartment where the informant said he had purchased drugs from Rice. Though Wheeler was aware that Rice did not reside at the apartment listed in the warrant, he did not include this information in his complaint, nor did

3

he advise Judge Cervini of this fact. In addition, the police took no steps to ascertain who actually resided at the address listed in the warrant.

Prior to presenting the complaint to Judge Cervini, Wheeler received authority to obtain the search warrant from his superior, Lieutenant Jose Mazariegos, and also obtained approval from an assistant state's attorney. Wheeler and the confidential informant then met with Judge Cervini. Cervini questioned the confidential informant under oath for approximately fifteen minutes, asking him about his prior arrests for narcotics, the body of the search warrant, whether the police had promised him anything, the number of times he had purchased narcotics from the apartment located at 2947 W. Warren, whether the officers had taken him to that address, and whether he had pointed out the exact address where he purchased the drugs. Defs' 56.1 Stmt. ¶ 51. After reviewing the documents and conducting the interview, Judge Cervini issued the search warrant.

At approximately 8:45 a.m. on September 28, 2002, Maywood police officers executed the search warrant at 2947 W. Warren. Though certain of the facts relating to what occurred during the search are in dispute, it is clear that a group of police officers breached the front door of the apartment using a battering ram and entered the residence. The police officers were wearing black gear and carried long-barrel rifles and "flash bands," and some wore masks. Defendants state that Mazariegos was the officer in charge at the scene and that Wheeler was assigned to watch the back of the house and did not enter the premises until after residents were secured in the living room.

At the time of the search, Valerie Horne was at home with her children, Verina, age eighteen, Vernita, age sixteen or seventeen, Verlisa, age eleven, Vernon, age seven or eight, and

4

Valerie's granddaughter, Verlinsia, age three. The parties dispute the level of force police used, but they agree that the officers gathered the Horne family members in the living room, where they remained for the duration of the search. It is undisputed that Valerie, Verina, and Vernita were handcuffed while the officers conducted the search. Defs' 56.1 Stmt. ¶¶ 65, 67, 80, 81, 83. Likewise, it is undisputed that in the process of gathering family members in the living room, a police officer grabbed Verina's arm, threw her to the floor, and placed a gun to her head. *Id.* ¶¶ 79-81. Plaintiffs also allege that officers placed guns to the heads of Valerie and Vernita. The search lasted for approximately thirty to forty-five minutes.

## Discussion

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To determine whether a genuine issue of material fact exists, the Court views the record in the light most favorable to the Hornes, the non-moving party in this instance, drawing reasonable inferences in their favor. *Id.* at 322. Nonetheless, a party opposing summary judgment may not simply rest on the pleadings but must instead affirmatively demonstrate that there is a genuine issue for trial. *Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003); *see also Davis v. GN Mortgage Corp.*, 244 F. Supp.2d 950, 955 (N.D. Ill. 2003) ("A defendant is entitled to put the plaintiff to his proofs and demand a showing of the evidence."). Thus, the Hornes must produce specific facts to support their contentions rather than relying on speculation and conclusions without factual support. *Rand v. CF Industries, Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994). The Court will address

each count of the complaint in turn.

1. **Unreasonable search and seizure**

    a. **Claim against Wheeler**

Plaintiffs contend that Wheeler knowingly used false information to obtain and execute the search warrant of the Horne residence. Specifically, they allege that Wheeler knew that Rice did not reside at the address listed in the warrant but failed to alert Judge Cervini to that fact. Nor, they argue, did the police take reasonable steps to confirm the confidential informant's tip or to discover the true residents of the address and determine whether there was evidence that anyone living there was committing a crime. The Hornes maintain that Wheeler's failure to disclose the address discrepancy to Judge Cervini was a material nondisclosure and that had he provided this piece of information, probable cause to search the Horne residence would not have existed.

In support, the Hornes submit an affidavit of the now retired Judge Cervini, dated February 18, 2005. In her affidavit, Cervini states that based upon her review of the complaint for the search warrant and Wheeler's deposition taken during discovery in the present litigation, she does "not believe that Officer Wheeler provided [her] with full and accurate information when he requested [her] signature on the search warrant for 2947 W. Warren Blvd." Cervini Aff. ¶ 13. She goes on to say that had Wheeler provided her with all the information disclosed in his deposition, she would not have signed the search warrant authorizing the raid of the apartment, but instead would have requested additional information to ensure that there was some connection between Rice and the residents of 2947 W. Warren. *Id.* ¶ 14.

Wheeler maintains that probable cause existed to obtain and execute the search warrant

for 2947 W. Warren independent of whether or not Rice resided at that address. He asserts that plaintiffs have failed to raise a genuine issue of material fact regarding whether he knowingly provided false and misleading information in his application for the search warrant or purposely withheld information that would have negated a finding of probable cause.

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court announced the standard for invalidating a search warrant due to alleged false statements in the application for the warrant. The Court noted that affidavits supporting a warrant are presumed valid but held that a defendant is entitled to a hearing if he can make a substantial preliminary showing that the affiant knowingly, or with reckless disregard for the truth, included in the application a false statement that was necessary to the finding of probable cause. *Id.* at 171-72; *see also, e.g., Forman v. Richmond Police Dept.*, 104 F.3d 950, 963-64 (7th Cir. 1997). If, at the hearing, the defendant establishes the false statement and the requisite intent and also shows that without the false material, the application would be insufficient to establish probable cause, the warrant is invalid. *Forman*, 104 F.3d at 964. The Seventh Circuit has extended the *Franks* standard to civil actions for damages, like the case at hand, in which a plaintiff alleges that a police officer deliberately misrepresented facts in a warrant application. *Perlman v. City of Chicago*, 801 F.2d 262, 264 (7th Cir. 1986).

Applying the *Franks* standard, the Court concludes that plaintiffs have failed to make the necessary showing that probable cause to search the apartment would not have existed had all material facts been disclosed. "[A]n affidavit procured in part by tainted evidence is not necessarily invalid because the untainted information, considered by itself, may establish probable cause for the warrant to issue." *Forman*, 104 F.3d at 964.

7

As defendants aver, Maywood police would have had probable cause to search the apartment located at 2947 W. Warren even if Wheeler had stated in his affidavit that Rice did not reside at that address, or the affidavit had not included the informant's belief that Rice lived in that apartment. Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983). Courts apply a totality-of-the-circumstances test to probable cause inquiries, including those involving an informant's tip. *See Gates*, 462 U.S. at 238. The confidential informant provided Wheeler with specific, recent, first-hand information describing his experience buying heroine from Rice at the 2947 W. Warren apartment. *See United States v. Price*, 888 F.2d 1206, 1209 (7th Cir. 1989). He admitted that he had bought heroin from that address on over 300 occasions, and he described in detail the various drug paraphernalia and guns he had observed in the apartment. He was also able to provide police with a sketch of the apartment's layout. Wheeler verified this information by having the informant show him the location of the apartment and, at least according to Wheeler, by obtaining information from Chicago police officers that Rice was a known drug dealer in the area.

Though the confidential informant was himself a known drug dealer and had previously served time in prison, the fact that he identified his source and the location of the drug transactions in the context of making an admission regarding his own illegal activity lends credence to his statement. *See United States v. Harris*, 403 U.S. 573, 583 (1971) ("People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility – sufficient at least to support a finding of probable cause to search.").

8

In short, the informant's tip provided the requisite probable cause to search the address in question regardless of whether Rice actually lived in that apartment.

Moreover, the fact that Rice did not live at the address listed in the warrant did not undercut the informant's statement that Rice sold drugs out of that apartment. It is not uncommon for criminals to conduct illegal activity at locations other than their primary residence. The confidential informant provided officers with sufficient information to establish both a reasonable probability that Rice was engaged in illegal activity and that illegal activity was occurring within the apartment located at 2947 W. Warren. Thus, the fact that Rice did not reside at that address was immaterial to the probable cause inquiry.

Judge Cervini's affidavit, made almost two and a half years after she had issued the warrant, is insufficient to create a genuine issue of material fact. Notably, Judge Cervini does not state that she would have concluded that probable cause to search 2947 W. Warren was lacking had she known that Rice did not reside there; rather, she simply opines that she would have requested additional information before issuing the warrant. The informant's statement, and as best as one can tell his responses to Judge Cervini's questioning before she issued the warrant, established probable cause that criminal activity was afoot at the 2947 W. Warren apartment. Otherwise, one must assume, Judge Cervini would not have issued a warrant.

The issue of whether probable cause exists is ordinarily a question of fact. *See Sheikh-Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994). A determination that probable cause existed as a matter of law is appropriate, however, if "there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Id.* Because no genuine issue of material fact exists regarding whether probable cause existed to search the 2947

W. Warren apartment, we conclude that probable cause existed as a matter of law.

### c. Monell claim against the Village

Plaintiffs have also advanced a claim against the Village of Maywood for unreasonable search and seizure. A municipality may be held liable under § 1983 for the unconstitutional actions of its employees only if the plaintiff can demonstrate that the alleged constitutional deprivation was caused by a policy or custom of the municipality. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). Liability may exist under *Monell* if an express policy of the municipality caused the constitutional deprivation; the deprivation was caused by a widespread practice that is so permanent and well settled that it constitutes a policy with the force of law; or plaintiff's injury was caused by a municipal official with final policymaking authority. *See McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995).

Plaintiffs provide no evidence that an official policy or custom of the Maywood Police Department led to the alleged unreasonable seizure. Rather, they argue that the Village is liable because Lieutenant Mazariegos, who plaintiffs claim had final policymaking authority, supervised Wheeler and approved the search warrant knowing that it contained misleading information concerning Rice's address. Plaintiffs point out that a Maywood patrol officer must obtain approval from a supervisor before presenting a search warrant application to a court. See Defs' 56.1 Stmt. ¶ 34.

Mazariegos does not, however, have the type of official policymaking position contemplated by *Monell*. The fact that he had discretion deciding whether to approve a warrant application does not give rise to municipal liability unless he was responsible for establishing final government policy with respect to that activity. *See Eversole v. Steele*, 59 F.3d 710, 715-

10

716 (7th Cir. 1995) ("The discretion to make final decisions to carry out the policies of a local law enforcement entity does not equate to policymaking authority."). The Court looks to state and local law to determine whether Mazariegos had responsibility for making law or setting policy within the municipality. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988); *Eversole*, 59 F.3d at 716; *see also Murphy v. City of Chicago*, No. 01 C 1802, 2002 WL 977508, at *6. Plaintiffs have cited no authority suggesting that lieutenants have such authority in Maywood. Moreover, Maywood Code § 32.03 provides that "[t]he Police Chief shall make such rules and regulations for the conduct and guidance of the Police Department personnel as he shall deem advisable and such rules and regulations, when approved by the Village Manager, shall be binding on the members." *See* Defs' Reply at 9. This ordinance is consistent with case law holding that a county sheriff and chief of police are, in their respective positions, final policymakers in this context. *See Eversole*, 59 F.3d at 716 n.7. Accordingly, plaintiffs cannot maintain their claim against the Village.

2. **Excessive force**

    a. **Claim against Wheeler**

Plaintiffs allege that after the officers entered the Hornes' apartment, an officer "grabbed [Valerie] off the couch, threw her to the ground, put a gun to her head and handcuffed her behind her back. Her nightgown was up and her genitalia was exposed." Pl's Resp. at 12. Plaintiffs also report that police officers threw Verina to the floor and placed a gun to her head. *Id.* at 12. Similarly, they claim that officers put Vernita on the ground face down and placed a foot on her back and a gun to her head. *Id.* at 12-13. The Court accepts these allegations as true for the purposes of this motion.

11

Plaintiffs contend that Maywood police officers' use of force was excessive given the fact that they did not have probable cause to believe that any Horne family member had committed a crime or posed a danger to police. The Fourth Amendment prohibits police officers from using excessive force during the execution of a search or seizure. *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000).

A warrant to search for contraband that is founded upon probable cause implicitly supplies officers with the limited authority to detain residents while a search of the premises is conducted. *Michigan v. Summers*, 452 U.S. 692, 705 (1981); *United States v. Price*, 888 F.2d 1206, 1209 (7th Cir. 1989). Because Maywood police officers had a valid warrant to search the Homes' apartment for drugs and contraband, it was permissible for the officers to initially seize the residents. *See Powers v. Sliozis*, No. 89 C 5020, 1991 WL 268667, at *5 (N.D. Ill. 1991).

The question of whether the officers acted within constitutional bounds when they allegedly threw Valerie, Verina, and Vernita to the ground and held a gun to their heads is more complicated. But the Court need not reach this issue, as plaintiffs have provided no evidence that Wheeler, the only Maywood officer they have sued, participated in any of the wrongful actions that plaintiffs cite.

To hold Wheeler liable under § 1983, he must have been personally involved in the constitutional wrongdoing. *Gibson v. City of Chicago*, 910 F.2d 1510, 1523 (7th Cir. 1990); *Cygnar v. City of Chicago*, 865 F.2d 827, 847 (7th Cir. 1989); *Powers*, 1991 WL 268667, at *4. The uncontroverted evidence shows that Wheeler did not participate in the entry into and the initial sweep of the residence and thus could not have been involved in the detention and handcuffing of any of the plaintiffs.

12

Wheeler testified that his assigned duty was to patrol the back entrance of the Hornes' apartment with a K-9 unit officer while the other officers, the "entry team," secured the apartment. Wheeler Dep. at 103, 120. He further testified that when he entered the apartment for the first time, approximately five minutes after the entry team, the family was already seated on the couches in the living room. *Id.* at 120. Mazariegos' testimony regarding the identity of members of the entry team and the order in which they entered the house supports Wheeler's testimony that he was not among the initial group of officers entering the apartment. Mazariegos Dep. at 118-119.

Plaintiffs offered no evidence that would draw Wheeler's statements into question. They simply respond that the Horne family members could not see the officers' faces and were therefore unable to identify which officer took what action. Pls' 56.1 Resp. ¶ 58. The Court acknowledges that the Hornes are at a disadvantage to refute Wheeler's position, as many of the officers entering the apartment were wearing masks, but it does not appear that plaintiffs have in any way attempted to discern the identity of the officers through the discovery process. Given the complete dearth of evidence that Wheeler participated in the alleged use of excessive force, plaintiffs' claims against him may not survive summary judgment. *See Rand*, 42 F.3d at 1146.

### b. Claim against the Village

Neither side discusses whether the Village may be held liable for the alleged excessive force used by its officers during the search. As with the claim for unreasonable search and seizure, the Hornes must provide evidence from which a jury reasonably could find that an official policy or custom of the Village or the Maywood police department caused the injury to plaintiffs. *See Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 620 (7th Cir.

2001). In their second amended complaint, plaintiffs contend that the Village "lack[ed] adequate policies, procedure, training, and/or supervision concerning the execution of a constitutionally valid search warrant." Compl. at 6. But the Hornes have provided no evidence or argument that a policy or custom of the Maywood Police Department caused the alleged excessive force employed by the officers. Consequently, the Village is entitled to summary judgment on plaintiffs' excessive force claim.

### 3. Failure to knock and announce

#### a. Claim against Wheeler

The requirement that police officers executing a search warrant on a dwelling knock and announce their identity and intention before making a forcible entry is built into the Fourth Amendment's prohibition on unreasonable searches and seizures. *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995); *U.S. v. Espinoza*, 256 F.3d 718, 723 (7th Cir. 2001). Plaintiffs assert that Wheeler and his fellow officers violated this rule by failing to knock and announce their presence before breaking in the door of the apartment to execute the search.

Plaintiffs' contention is based on Valerie, Verina, and Vernita's testimony that they did not hear the Maywood police announce their entry. Valerie testified that she was asleep on a couch in the living room the morning of the search and was awoken when the officers broke through the door. When questioned whether she knew if the officers knocked, Valerie replied, "Well, I was sleep. What woke me up, I could say, was the bust through the door." Valerie Dep. at 33. Similarly, Vernita testified that she was asleep in her bedroom in the basement when the police entered the house. Vernita Dep. At 39. She believes that the crashing noise – the officers ramming the door – woke her up, but she testified that she heard nothing before the crash. *Id.*

14

Verina testified that she was awake and in the kitchen at the time the officers entered the apartment. Verina Dep. at 28-29. She did not hear the officers come through the front door, but she testified that she did hear her mother scream. *Id.* at 29.

Defendants maintain that Officer Patrick Grandberry, an entry team officer, knocked on the apartment door twice, with each repetition containing three knocks, and repeatedly yelled "Maywood police, search warrant, open the door." Grandberry Dep. at 37-39. Grandberry testified that he waited five to ten seconds between the first and second knock and another five to ten seconds after the second knock before forcing open the door. *Id.* at 39. Wheeler and Mazariegos corroborate Grandberry's testimony. Mazariegos Dep. at 120; Wheeler Dep. at 117.

All this is beside the point, however, as plaintiffs have offered no evidence placing Wheeler among the officers who forced their way through the door. Accordingly, there is no basis to hold Wheeler legally responsible for the alleged failure to knock and announce.

### b. Claim against the Village

The parties fail to discuss the Village's liability on the knock and announce claim. The Court assumes this is because plaintiffs can point to no municipal policy or custom that caused their alleged injury. The Village is entitled to summary judgment on plaintiffs' knock and announce claim.

### 4. Supplemental state law claims

Plaintiffs also assert supplemental state law claims against Wheeler and the Village for assault and battery, intentional infliction of emotional distress, and false imprisonment. Because the Court has granted summary judgment in the defendants' favor on each of the federal claims over which the Court has original jurisdiction, the Court declines to exercise supplemental

jurisdiction over plaintiffs' supplemental state law claims. *See* 28 U.S.C. § 1367(a)(3); *see also Montano v. City of Chicago*, 375 F.3d 593, 601 (7th Cir. 2004); *Hoagland v. Town of Clear Lake*, 415 F.3d 693, 700 (7th Cir. 2005) (district court wisely refused to exercise supplemental jurisdiction over plaintiffs' state law claims after properly dismissing all federal claims).

## Conclusion

For the reasons stated above, the Court grants defendants motion for summary judgment [docket no. 28]. The trial date of January 9, 2005 is vacated. The Clerk is directed to enter judgment in favor of defendants on Counts 1-3 of plaintiffs' second amended complaint and dismiss the remaining counts for lack of supplemental jurisdiction.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 6, 2005